# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### at GREENEVILLE

SHANNON LEE JARNIGAN,      )
                             )
      Petitioner,         )
                             )
v.                          )          No. 2:12-cv-205-HSM-WBC
                             )
DEBRA JOHNSON, Warden,     )
                             )
      Respondent.       )

## MEMORANDUM OPINION

In March of 2006, petitioner Shannon Lee Jarnigan (hereinafter "Jarnigan" or "Petitioner") was convicted of first degree premeditated murder by a jury in the Hamblen County, Tennessee Criminal Court, receiving a life term of imprisonment for this offense. Following her fruitless attempts to obtain relief from her conviction in the Tennessee courts, she filed this pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging the legality of her confinement [Doc. 3]. Warden Debra Johnson has filed a response, arguing that relief is not warranted with respect to Jarnigan's claims and, in support of these arguments, has submitted copies of the state court record [Docs. 7-8, 10, Addenda Nos. 1-4].

For reasons which appear below, this petition will be **DENIED**.

## I. PROCEDURAL HISTORY

On November 19, 2007, Jarnigan's conviction and those of her codefendants were affirmed on direct appeal by the Tennessee Court of Criminal Appeals (hereinafter "TCCA"). *State v. Smith*, No. E2006-984-CCA-R3-CD, 2007 WL 4117603 (Tenn. Crim. App. Nov. 19, 2007), *perm. app. denied* (Tenn. 2008). On February 25, 2008, the Tennessee Supreme Court

(hereinafter "TSC") denied her application for permission to appeal. *Id.*

Petitioner did not file a petition for a writ of certiorari in the Supreme Court but, instead, she challenged her conviction under the Tennessee Post-Conviction Procedure Act, by means of filing on December 5, 2008, a petition for post-conviction relief. *Jarnigan v. State*, No. E2010-1254-CCA-R3-PC, 2011 WL 3715809, *1 (Tenn. Crim. App. Aug. 24, 2011), *perm. app. denied* (Tenn. 2012). After holding an evidentiary hearing on the claims, the state post-conviction court denied the petition and the TCCA affirmed the denial. *Id.*, 2011 WL 862029, at *1, *5. Petitioner's request for permission to appeal was likewise denied by the TSC.

There followed this instant timely § 2254 habeas corpus application.

## II.    FACTUAL BACKGROUND

Donald Wilder, Jr., an important witness in multiple pending drug prosecutions in state court, was murdered in June of 2003. Wilder was last seen with Jarnigan and one of her co-defendants, George Arthur Lee Smith (hereinafter "Smith"), who was also her boyfriend.  An investigation ensued and a warrant was issued authorizing a search of the trailer where Jarnigan and Smith were staying. During the execution of the search warrant, the two were placed in the back seat of a police cruiser, in which had been installed a device that recorded their conversation.  The relevant portion of that conversation was as follows:

[Petitioner]:.... They know what happened to [the victim] too.

....

[Smith]: You don't know nothing about [the victim]....

[Petitioner]: If you go[,] I'll come bail you out. Okay. Just ... just say it was yours and I didn't know nothing about it.

[Smith]: Alright. Come bail me out ... alright? ... know nothing about [the victim].

[Petitioner]: ... He said something about you know what happened to [the victim] and something that we're all gonna have a discussion about it. I said I....

....

[Smith]: Just stick to the story.... They'll probably get me for the scales and ... if they don't find it. Okay. You know all that shit[']s hid over, ones over....

....

[Smith]: .... f* *k the dope ... about [the victim].

[Petitioner]: Well I don't know.

[Smith]: I don't know nothing about [the victim]. I'm just telling the truth I'm gonna tell em [sic] the truth. You know, you know I don't know what happened.

[Petitioner]: That one's Chris Smith right there.

[Smith]: I know. He's homicide.

[Petitioner]: He's .... you ...

[Smith]: The search warrant wasn't for the dope....

....

[Smith]: I need to read that mother f* *king search warrant .... didn't show me no [sic] search warrant.

[Petitioner]: Ask, holler at dude and ask him.

[Smith]: I need to, I need to read the search warrant man. F* *k that. I ain't [sic] got no gun I ain't [sic] got nothing, nothing here that'll link us. Clothes, shoes, nothing.... What I mean is ... I still go, I, I, I, don't have no [sic] new shoes.

....

[Smith]: I need to read the search warrant.... I want to know if you are searching for f*

3

*king evidence due to a homicide or you searching for f* *king drugs. What are you searching for?

*Smith*, 2007 WL 4117603, at *2 -3.

After an investigation, Jarnigan was charged with first degree premeditated murder, under the theory of criminal responsibility, based on her alleged assistance in Wilder's shooting.

Various witnesses offered proof at the trial. Chad Smith, an agent with the Tennessee Bureau of Investigation ("TBI"), testified that, in July of 2003, he investigated Wilder's disappearance and that he interviewed Petitioner, who gave a statement discussing the gun used to shoot Wilder. In her statement, Petitioner provided a map which depicted where the gun was located and admitted that she had lied previously about the last time that she saw the victim. *Smith*, 2007 WL 4117603, at *6-7. Other witnesses offered the following evidence as to Jarnigan's role in the murder:

> Danielle Lynne Epps testified that . . . on June 24, 2003, . . . she asked [another Co-Defendant] if she could go to his house to purchase some drugs. He said to call him back later because he just gave all of his drugs to [Petitioner] Jarnigan. [The Co-] Defendant . . . said that [Petitioner] Jarnigan took the drugs and asked for some rubber gloves and a piece of plastic or paper, and told him that they [were] getting ready to "do" the victim.
>
> ...
>
> - Kristopher Jarnigan testified that he is [Petitioner] Jarnigan's brother, and . . . that, in the summer of 2003, [Petitioner] Jarnigan contacted him trying to obtain a gun. She also asked Jarnigan's father and brother for a gun.
>
> . . .
>
> Connie D. Lawson, Defendant Smith's sister, testified that she . . . knew [Petitioner] Jarnigan as her brother's girlfriend. Lawson testified that, in 2003, both Defendant Jarnigan and Smith lived

4

with her. While they lived with her, she saw Defendant Smith with a black pistol wrapped in a white towel. She said that the pistol was loaded with a clip, had a laser, and she saw Defendant Smith fire the pistol while he was at her house.

Lawson testified that, on June 26, 2003, she saw [Petitioner] Jarnigan when she picked her up at the Hillcrest Inn and took her to the Family Dollar, where [Petitioner] purchased some clothing. When she picked her up, she saw Defendant Smith and the victim in the same motel room. After she and [Petitioner]Jarnigan returned from shopping, and while Lawson was leaving, she saw the victim, Defendant Smith, and [Petitioner] Jarnigan all walking from the motel room toward a wooded area in the back.

Lawson testified that later that evening she saw Defendant Smith at their mother's house, and he asked her to give him a ride. She gave a ride to Defendant Smith, [Petitioner] Jarnigan, and a little red haired boy, taking them to the boy's house. Lawson then dropped Defendant[] Smith and [Petitioner] Jarnigan at the Super 8 Motel. The next day, she saw Defendant[] Smith and[Petitioner] Jarnigan wearing the clothes that [Petitioner] Jarnigan purchased the previous day. [Petitioner] Jarnigan had with her two blue Food City bags, both tied at the top. Lawson testified that she saw . . . Defendant[Smith and Petitioner Jarnigan] again the following day at her house, and they no longer had the blue bags.

Lawson testified that she talked with Defendant Smith while they were at her house and that Defendant Smith was crying "really hard." He told her that he had shot the victim in the back of the head. [Petitioner] Jarnigan, who was also in the room, said, "We killed him execution style." Lawson said that the Defendant told her that he was urinating in the woods and turned around and shot the victim in the back of the head. Later, Defendant Smith also told Lawson that the victim's hair flew into Defendant Smith's mouth when he shot him. Defendant Smith also told her that he had moved the victim's body and that it looked like dogs had been eating the body.

Lawson testified that, a few weeks later, she gave [Petitioner] Jarnigan a ride to the Roe Junction community. On the way back, [Petitioner] Jarnigan indicated a spot where the Defendant[] Smith and Petitioner Jarnigan] had thrown "evidence out." Lawson said that she told [Petitioner] Jarnigan that she was crazy, and [Petitioner] Jarnigan said, "Yes, I am crazy[,] and I've got papers from Lakeshore and I can get away with anything."

*Smith*, 2007 WL 4117603, at *9 -11, *13.

In her statement to TBI Agent Smith, Jarnigan insisted that the last time she saw Wilder was at the Hillcrest Motel; that she left the motel with a friend to go to a grocery store, where she used her food stamp card to spend $150; and that she did not know what happened to Wilder. *Id.*, 2007 WL 4117603, at *6. However, Agent Smith testified that the victim went missing around June 26, 2003, and the record custodian for the food stamp program testified that the last transaction shown for the month of June on Jarnigan's E.B.T. account was on June 7, 2003. *Id.*, 2007 WL 4117603, at *2, *7. On this evidence and additional evidence concerning the crime, the Hamblen County Criminal Court jury convicted Jarnigan of the charged offense.

## III.    DISCUSSION

Jarnigan's § 2254 petition for habeas corpus lists two main grounds for relief: ineffective assistance of counsel and due process violations [Doc. 1]. The Warden argues, in her answer, that Petitioner is not entitled to relief with regard to the state court decisions rejecting many of her ineffective assistance claims on the merits, given the deferential standards of review set forth in 28 U.S.C. § 2254. With respect to the due process claims and any ineffective assistance claims not presented first to the state courts, the Warden maintains that they are barred from habeas corpus review due to Jarnigan's state procedural defaults.

The Court agrees with Respondent Warden concerning Petitioner's entitlement to habeas corpus relief and, for the reasons which follow, will **DENY** the petition and **DISMISS** this case.

The claims have been organized into two categories for purposes of discussion – adjudicated claims, followed by those claims subject to a procedural default.

### A.    Adjudicated Claims

This category of claims consists solely of claims that Petitioner received ineffective

assistance at trial from her appointed attorney, William Louis Ricker. Petitioner presents numerous alleged failings on the part of Mr. Ricker, but only five of those purported shortcomings presented in her § 2254 petition were raised and adjudicated in the TCCA. Those claims are that counsel: (1) did not seek to suppress the taped conversation between Petitioner and Smith which occurred in the back seat of the police car; (2) advised her that it was not in her best interest to testify on her own behalf; (3) did not call any witnesses on her behalf (4) did not obtain for her a psychological examination; and (5) did not conduct interviews and thoroughly investigate her case.

Petitioner's claims will be evaluated under the review standards contained in the Antiterrorism and Effective Death Penalty Act (AEDPA), codified in 28 U.S.C. § 2241, which instruct a court considering a habeas claim to defer to any decision by a state court concerning the claim unless the state court's judgment (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d)(1)-(2).

A state court's decision is "contrary to" federal law when it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or resolves a case differently on a set of facts which cannot be distinguished materially from those upon which the precedent was decided. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Under the "unreasonable application" prong of § 2254(d)(1), the relevant inquiry is whether the state court decision identifies the legal rule in Supreme Court cases which governs the issue but unreasonably applies the principle to the particular facts of the case. *Id.* at 407. The habeas court is to determine only

whether the state court's decision is objectively reasonable, not whether, in the habeas court's view, it is incorrect or wrong. *See id.* at 411; *see also Harrington v. Richter*, 562 U.S. 86,102 (2011) ("[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").

This is a high standard to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (noting that "§ 2254(d), as amended by AEDPA, is a purposefully demanding standard . . . 'because it was meant to be'") (quoting *Harrington*, 562 U.S. at 102). Further, findings of fact which are sustained by the record are entitled to a presumption of correctness—a presumption which may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### 1. Motion to Suppress

In this claim, Petitioner maintains that Mr. Ricker did not attempt to have suppressed the taped conversation that occurred between her and Smith in the back seat of the police car. Petitioner's testimony at the state court post-conviction hearing fleshes out her barebones claim, where she stated that, despite not having been given the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1996), her conversation with Smith in the police cruiser was recorded by a hidden audio tape recorder. *Jarnigan v. State*, WL 3715809, at *2.

The TCCA held as follows:

> Although trial counsel did not file a motion to suppress, he did file a motion prior to trial to exclude the audiotape recording from evidence. This is tantamount to a motion to suppress. The trial court ruled against Petitioner. This Court has previously determined that two individuals who are not under arrest, but are in the backseat of a police cruiser, and have a voluntary conversation that is recorded do not have an expectation of privacy. The recording of a conversation in this factual scenario, as is the case at hand, does not violate an individual's constitutional rights.

*Jarnigan v. State*, WL 3715809, at *7 (all internal citations omitted). The TCCA went on to find Petitioner was unable to show prejudice from counsel's alleged error and did not grant her any relief.

### a. Applicable Law

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. IV. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a break down in the adversary process that renders the result unreliable.

*Id*.

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id.* at 688. A petitioner asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477

9

U.S. 365, 381 (1986). Thus, it is strongly presumed that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

Second, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 454-455 (quoting *Strickland*, 466 U.S. at 694). Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

### b. Analysis

In considering this claim and all other ineffective assistance claims, the TCCA cited to *Strickland*—the seminal case for determining whether counsel has rendered constitutionally ineffective assistance, as well as to *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)—a case which holds that a petitioner who claims ineffective assistance must show that counsel's advice or services fell below the range of competence demanded of attorneys in criminal cases. *Baxter*'s analysis is the equivalent of the performance-prong of the *Strickland* test. Thus, the state court's decision on this claim and all other such claims was not "contrary to" clearly established federal law as determined by the Supreme Court.

Thus, the question is whether it was an unreasonable application of *Strickland* for the TCCA to conclude that relief was unwarranted based on the lack of a showing of prejudice. The TCCA found as a fact that Mr. Rucker filed the equivalent of a motion to suppress. Since this finding of fact has record support and since there is no clear and convincing contravening evidence, this Court defers to that finding. *See* 28 U.S.C. § 2254(e)(1). Though the TCCA did

10

not rest its decision on its finding that counsel filed the equivalent of a motion to suppress, such a finding seemingly would doom Petitioner's ineffective assistance claim on the basis of no deficient performance, without examining prejudice.

Yet the TCCA hinged its rejection of this ineffective assistance claim on a finding that Petitioner showed no prejudice from any failure to move to suppress the recording because she had no legitimate expectation of privacy in the back seat of the police car. The "right of privacy" aspect of the ineffective assistance claim falls within the scope of the Fourth Amendment. The Fourth Amendment to the Constitution constitutes a limitation on the police powers of the states of the United States by protecting against unreasonable searches and seizures. "The gravamen of a Fourth Amendment claim is that the complainant's legitimate expectation of privacy has been violated by an illegal search or seizure." *Kimmelman*, 477 U.S. at 374 (citing *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)).

Though this circuit has not yet addressed the issue, seven circuits have done so and all have concluded that there is no reasonable expectation of privacy in the back seat of a police cruiser. *United States v. Webster*, 775 F.3d 897, 903-04 (7th Cir.) *cert. denied*, 135 S. Ct. 2368 (2015) (listing cases); *see United States v. Reese*, No. 1:09CR00145, 2010 WL 2606280, at *4-5 (N.D. Ohio June 25, 2010) (same), *adhered to on reconsideration*, No. 1:09 CR 00145, 2010 WL 3730148 (N.D. Ohio Sept. 17, 2010).

At any rate, Petitioner has not pointed to any governing Supreme Court precedent to show that the state court's rejection of her ineffective assistance claim on the ground of a lack of showing of prejudice was based on an unreasonable determination of the facts presented to the TCCA or an unreasonable application of *Strickland*. *See Strickland*, 466 U.S. at 697 (Where "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . .

that course should be followed.").  Counsel has no duty to assert legally baseless claims, and he cannot be ineffective when he does not raise such claims.  *Greer v. Mitchell*, 264 F.3d 663, 676 (2001).  The writ will not issue with respect to this claim.

### 2.  Right to Testify

Petitioner maintains that counsel would not permit her to testify on her own behalf [Doc. 3 p.7].  Once again, the post-conviction record furnishes elaboration for Petitioner's factually undeveloped claim as offered in her § 2254 petition.  The post-conviction court found, in effect, that Petitioner's testimony at the post-conviction hearing disproved her claim when she stated that Mr. Ricker "told me it was in my best interest not to testify" and it further found that, due to her conflicting sworn statements, she was not as credible as her attorney, who testified that he told her that it was not in her best interest to testify and also stated that she agreed with his assessment as to the wisdom of her exercising her right to testify.

Upon reviewing the lower state court's record, the TCCA determined that Petitioner had not shown that, in this instance, counsel gave her ineffective assistance.

A state court's credibility finding is entitled to special deference by a federal habeas court.  *See Patton v. Yount*, 467 U.S. 1025, 1038 (1984); *see also Rice v. Collins*, 546 U.S. 333, 342 (2006) ("Reasonable minds reviewing the record might disagree about the prosecutor's credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination.").

Based on the lower state court's credibility finding and Petitioner's testimony at the post-conviction hearing that counsel advised her that it would be in her best interest not to testify, that she agreed with his advice, and that he did not tell her not to testify [Doc. 8, Addendum 2, vol. 2 p.22-23], the TCCA's disposition of the claim is not at odds with § 2254(d)'s "adjudicated

claims" standards. Therefore, habeas corpus relief will not be granted with regard to this issue.

### 3. Failure to Call Witnesses

In her third claim, Petitioner maintains that counsel did not call any witnesses on her behalf, though he should have called her probation officer, Jeff Ackerd; a mental health expert to rebut Connie Lawson's testimony and to attest to the results of a psychological test which counsel should have requested; Renee Banks (Simpson) who would have provided Petitioner an alibi; and a police officer who could have testified that Petitioner had been subjected to domestic abuse.

When this claim was carried to the TCCA, it noted that trial counsel had testified at the post-conviction hearing that he and the investigator he employed could not locate several witnesses Petitioner suggested, that the ones he located were untruthful, and that he declined to present an alibi witness whom he viewed as not being credible. Pointing out that the state post-conviction court had found the decision to be tactical, the TCCA itself determined that Mr. Rucker's decision not to present those witnesses was reasonable and one that was not to be second-guessed.

Likewise, the TCCA noted that because Petitioner had not presented those witnesses at her post-conviction hearing, there was nothing to show the substance of the testimonies they would have given at the trial. By virtue of Petitioner's omission, there was no evidence as to the prejudice component of *Strickland*.

According to the Supreme Court, tactical decisions are especially onerous for a petitioner to attack. *See Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ."). Moreover, "[a] strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's

decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness."
*Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001*); see Harrington*, 526 U.S. at 112
("The likelihood of a different result must be substantial, not just conceivable."). Absent a
showing of a prejudicial performance in the state court proceedings, the TCCA's rejection of the
claimed attorney error was not an unreasonable application of *Strickland*, and she is entitled to
no § 2254 relief.

### 4. Failure to Obtain a Psychological Examination

In her next claim, Petitioner maintains that trial counsel was ineffective for failing to seek
to obtain a psychological examination for her. Had Petitioner had a mental evaluation, it is her
position that the results of the evaluation could have explained the alleged incriminating
statements Petitioner made concerning her mental capacity to Connie Lawson; could have
impeached this witness's testimony involving those statements; and might have convinced the
jury that Petitioner "was or was not thinking rationally at the time these statements were/were
not made to Lawson" [Doc. 3 p.9].

In reviewing this instance of ineffective assistance, the TCCA pointed to trial counsel's
post-conviction hearing testimony that he considered Petitioner to be competent and that he saw
no "red flags" to indicate otherwise and then to the post-conviction court's finding that counsel
was credible. Even though Petitioner likewise had testified that she had had nervous breakdowns
and post-partum depression in the past, the TCCA did not disturb the lower court's credibility
finding.

The TCCA went on to observe that Petitioner had failed to present evidence as to what a
psychological evaluation would have shown. The TCCA concluded that, without such evidence,
Petitioner could not prove prejudice from counsel's alleged shortcoming. The TCCA did not

14

grant Petitioner any relief on this claim.

To succeed on a claim of ineffective assistance, a petitioner must show both deficient performance and prejudice. *Strickland*, 466 U.S. at 687. Petitioner has failed to show either of these things because she has presented no facts demonstrating that a mental evaluation was called for, despite counsel's credible testimony to the contrary, and because she has not established what the results of such an evaluation would have disclosed about her mental condition that would have helped her defense. She therefore has failed to demonstrate that the TCCA unreasonably rejected the instant claim. *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010) ("Surmounting *Strickland*'s high bar is never an easy task.").

### 5. Failure to Interview and Investigate

In her last claim of ineffective assistance, Petitioner asserts that counsel failed to properly interview witnesses, which could have helped prepare him more adequately for their eventual cross-examination. Though counsel is said to have relied on prior statements witnesses gave to law enforcement, Petitioner contends that those statements "were old and nebulous in nature" and that, by personally interviewing each witness who gave a statement, counsel could have highlighted the inconsistences and conflicts which existed between the statements of the witnesses during his cross-examination of those individuals [Doc. 3 p.11]. Petitioner maintains that, had counsel interviewed and investigated those witnesses, he could "have proved to the jury the erroneous nature of their purported testimony," which could have "discredit[ed] their testimony," and could have resulted in "a reasonable responsibility [sic] sufficient to undermine the confidence in the outcome" [*Id.*].

When the issue was carried to the TCCA, it pointed out that Petitioner had failed to

support her claim with any allegations of fact as to "what ways trial counsel failed to interview and investigate her case, or in what ways his representation was deficient in this regard." *Jarnigan*, WL 3715809, at *8. The TCCA once again underscored that the lower state court had determined that counsel's testimony was more credible than Petitioner's testimony and had further determined that her attorney "had sufficiently interviewed witnesses and investigated the case." *Id*. Finding nothing to counter the post-conviction court's factual findings, the TCCA concluded that Petitioner had failed to show a deficient performance on Mr. Rucker's part.

The factual determinations made by the post-conviction court and implicitly adopted by the TCCA based on its review of the record, are entitled to deference and, absent any clear and convincing evidence to the contrary, will be presumed correct. *Brumley v. Winard*, 269 F.3d 629, 637 (6th Cir. 2001) (citing *Sumner v. Matta*, 449 U.S. 539, 546-47 (1981)). Petitioner has adduced no such evidence.

The factual findings are determinative of the ineffective assistance claim. *Strickland* requires that a petitioner must identify counsel's precise acts or omissions upon which rests her claim of a deficient performance. *See Strickland*, 466 U.S. at 688. The state court concluded that Petitioner did not adhere to this requirement. Given that the AEDPA "demands that state-court decisions be given the benefit of the doubt," *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citing *Woodford v. Visciotti*, 537 U.S. 19, 24 (2001) (per curiam)), and given the onerous standard which must be met to prevail on an ineffective assistance claim under the AEDPA, *see Harrington*, 562 U.S. at 105 (noting that the range of reasonable applications of *Strickland* is substantial and that when § 2254(d) applies, review of an ineffective assistance claim is "doubly" deferential), the Court finds that relief is unwarranted here because Petitioner has failed to show that the TCCA's rejection of the instant claim of ineffective assistance was an unreasonable

application of *Strickland*. *See Webb v. Mitchell*, 586 F.3d 383, 395 (6th Cir. 2009) (observing the petitioner had failed to "overcome 'the strong presumption' that his trial counsel conducted a reasonable investigation") (citing *Campbell v. Coyle*, 260 F.3d 531, 553 (6th Cir. 2002).

### B. Procedural Defaulted Claims

Respondent Warden asserts a procedural default defense against all claims alleged as due process violations, to wit, those involving (1) the admission of a tape recorded statement, (2) prosecutorial misconduct, (3) improper jury selection, and (4) a jury instruction, as well as all remaining claims of ineffective assistance of counsel.

A state prisoner who petitions for habeas corpus relief must first exhaust her available state court remedies by presenting the same claim sought to be redressed in a federal habeas court to the state courts. 28 U.S.C. § 2254(b)(1). The exhaustion rule requires total exhaustion of state remedies, *Rose v. Lundy*, 455 U.S. 509 (1982) (emphasis added), meaning that a petitioner must have fairly presented each claim for disposition to all levels of appropriate state courts. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845-47 (1999). A claim must also be offered on a federal constitutional basis—not merely as one arising under state law. *Stanford v. Parker*, 266 F.3d 442, 451 (6th Cir. 2001) (citing *Riggins v. McMackin*, 935 F.2d 790, 792-93 (6th Cir. 1991)).

There are two types of procedural default. The first category rests upon "technical" exhaustion of state remedies. This kind of procedural default applies to a petitioner who failed to raise her claim in the state courts and who is now barred by a state procedural rule from returning with her claim to those courts. Thus, she has met the technical requirements of exhaustion (i.e. there are no state remedies left to exhaust) and therefore is deemed to have exhausted her state remedies, but to have done so by way of a procedural default. *Coleman v. Thompson*, 501 U.S.

722, 732 (1991).  The second type of procedural default happens where a petitioner has actually presented her federal claim to the state courts and where those courts have declined to address it due to her failure to meet a state procedural requirement. *See, e.g., Murray v. Carrier*, 477 U.S. 478 (1986) (failure to raise claim on appeal); *Reed v. Ross*, 468 U.S. 1 (1984) (same).

Both types of procedural default foreclose federal habeas review, unless the habeas petitioner can show cause to excuse her failure to comply with the state procedural rule and actual prejudice resulting from the alleged constitutional violation.  *Coleman*, 501 U.S. at 732. Cause can be shown where interference by state officials has rendered compliance with the rule impracticable, where counsel rendered ineffective assistance in violation of the prisoner's right under the Sixth Amendment, or where the legal or factual basis of a claim is not reasonably available at the time of the procedural default. *Murray v. Carrier*, 477 U.S. 478, 488, 492 (1986).

A petitioner demonstrates prejudice by establishing that the constitutional error "worked to h[er] actual and substantial disadvantage, infecting h[er] entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). Absent cause and prejudice, a petitioner who shows that she is actually innocent can overcome the procedural hurdle as well. *Murray*, 477 U.S. at 496.

### 1. **Due Process Claims 2 (Prosecutorial Misconduct) and 4 (Jury Instruction)**

Petitioner offered to the TCCA Claim 2, in which she alleges that the prosecutor engaged in misconduct by advising state witnesses not to talk to or have contact with the defense, and Claim 4, in which she maintains that the jury was not instructed on a lesser included offense. The TCCA cited to Tenn. Code. Ann § 40–30–106(g) and held that the claims were waived due to Petitioner's failure to present them on direct appeal, when they could have been offered.

When a state invokes a procedural default defense, a court in the Sixth Circuit must apply

a four-factor analysis to determine: 1) whether there is a procedural rule which applied to a petitioner's claim and whether a petitioner complied with the rule; 2) whether the procedural rule was actually enforced against a petitioner; 3) whether the rule is an adequate and independent state ground sufficient to block habeas review; and 4) whether a petitioner can demonstrate cause for her failure to comply with the rule and prejudice resulting from the alleged constitutional violation. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Beuke v. Houk*, 537 F.3d 618, 630 (6th Cir. 2008) (applying *Maupin*).

Tennessee has a procedural rule of waiver, *Hutchison v. Bell*, 303 F.3d 720, 738 (6th Cir. 2002), and the rule was applied in Petitioner's case. *Jarniga*n, 2011 WL 3715809 at *9. The rule is an adequate and independent state ground sufficient to foreclose habeas review. *Hutchison*, 303 F.3d at 738. No cause or prejudice has been alleged by Petitioner, and thus these two claims are barred from federal habeas review by her unexcused procedural default.

### 2. Due Process Claims 1 (Inadmissible Evidence) and 3 (Impartial Jury)

In Claim one, Petitioner asserts that her tape-recorded statement was inadmissible against her at trial and, in Claim three, that the selection of Juror William Stokes to serve on her petit jury denied her a fair and impartial jury. Neither of these claims was presented in Petitioner's direct appeal brief to the TCCA [Doc. 8, Addendum 1, Doc. 1].

Because Petitioner did not exhaust these claims in the state courts and because she has no remaining opportunity to do so, given the one-year statute of limitations and the one-petition rule which apply to post-conviction petitions in Tennessee, *see* Tenn. Code Ann. § 40-30-102(a) and (c), the claims have been technically exhausted, *see Castille v. Peoples*, 489 U.S. 346, 351-52 (1989) (finding that "[t]he requisite exhaustion may nonetheless exist, of course, if it is clear that [Petitioner]'s claims are now procedurally barred under [state] law"), but, at the same time, are

now procedurally barred. *Coleman*, 501 U.S. at 732.

Jarnigan has offered nothing by way of cause and prejudice. Since no cause and prejudice exists to excuse the procedural default of these two claims, federal review is foreclosed.

### 3. Ineffective Assistance Claims

Jarnigan has submitted for habeas corpus review a plethora of ineffective assistance claims which were not raised in the TCCA. Among these are claims that counsel failed to object to bias, to a violation of her right to a speedy trial, to the coercion of witnesses, to a forensic anthropologist's testimony, to the fact that cause of death could not be determined, and to hearsay; failed to fight for a change of venue; failed to investigate a jury verdict issued after only one hour of deliberation and to the disparate treatment between her and witnesses and her co-defendants; and failed to request jury instructions on corroboration of accomplice testimony instructions.

These claims were not asserted in Petitioner's post-conviction brief on appeal to the TCCA [Doc. 8, Addendum 3, Doc.1]. And once again, Jarnigan has not alleged cause or prejudice to excuse her failure to offer these ineffective assistance claims to the state courts, when she had the opportunity to do so. Accordingly, these claims have been procedurally defaulted and will not be reviewed in these habeas corpus procedings.

## IV. CONCLUSION

For the above reasons, this pro se state prisoner's application for a writ of habeas corpus will be **DENIED** and this case will be **DISMISSED**.

## V. CERTIFICATE OF APPEALABILITY

Finally, the Court must consider whether to issue a certificate of appealability (COA)

should Petitioner file a notice of appeal.  A petitioner may appeal a final order in a § 2254 case only if she is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253(c).  A petitioner whose claims have been rejected on a procedural basis must demonstrate that reasonable jurists would debate the correctness of the Court's procedural ruling.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001). Where claims have been dismissed on their merits, a petitioner must show reasonable jurists would find the assessment of the constitutional claims debatable or wrong.  *See Slack*, 529 U.S. at 484.

After having reviewed each claim individually and in view of the firm procedural basis upon which is based the dismissal of certain claims and the law upon which is based the dismissal on the merits of the rest of the claims, reasonable jurors would neither debate the correctness of the Court's procedural rulings nor its assessment of the claims.  *Id.*  Because Petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA will not issue.

**AN APPROPRIATE ORDER WILL ENTER**.

**ENTER:**

_____*/s/ Harry S. Mattice, Jr.*_____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE

21